UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEREMY SCOTT GUIDRY (#361122)          CIVIL ACTION

VERSUS

BURL CAIN                              NO. 05-1403-JVP-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, this 2nd day of October, 2008.

_____
DOCIA L. DALBY
MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEREMY SCOTT GUIDRY (#361122)          CIVIL ACTION

VERSUS

BURL CAIN                              NO. 05-1403-JVP-DLD

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Jeremy Scott Guidry, challenges his 1999 conviction and life sentence, entered in the Twenty-First Judicial District Court for the Parish of Livingston, State of Louisiana, on one count of second degree murder, a violation of La. R.S. 14:30.1. The petitioner claims that the evidence was insufficient at trial to support his conviction, that admission of the victim's wife's testimony was overly prejudicial, that the trial court erred in denying a motion for mistrial based upon an alleged improper communication between the jury and the victim's family, and that his attorneys provided ineffective assistance at trial and on appeal.

In July, 1999, after a trial by jury, the petitioner was found guilty of having committed the offense of second degree murder of Gavin James on the morning of January 11, 1998. The petitioner was sentenced to life imprisonment, without the benefit of probation, parole or suspension of sentence. Through his attorney, the petitioner appealed this conviction, (1) contending that the evidence was insufficient to support the verdict, and (2) requesting a patent error review. The petitioner thereafter supplemented the appeal, pro se, with the additional assertions that he was prejudiced by the introduction of the victim's wife's testimony and that the trial court erred in denying a motion for mistrial based on improper influence upon the jurors. On December 13, 2000, the conviction was affirmed by the Louisiana Court of Appeal for the First

Circuit, and on November 2, 2001, the petitioner's application for supervisory review in the Louisiana Supreme Court was denied. State ex rel Guidry v. State, 800 So.2d 870 (La. 2001).

On January 24, 2002, the petitioner filed an application for post-conviction relief in the state district court, asserting that his trial and appellate attorneys were ineffective in several respects. After an evidentiary hearing conducted in December, 2003, this application was denied in the district court, and subsequent applications for supervisory review before the Louisiana Court of Appeal for the First Circuit and the Louisiana Supreme Court were also denied, with the Louisiana Supreme Court denying review on April 22, 2005. See, e.g., State ex rel Guidry v. State, 899 So.2d 561 (La. 2005).

On December 15, 2005, the petitioner filed the instant habeas corpus application in this Court. The State concedes that the petitioner has exhausted state court remedies relative to his claims as mandated by 28 U.S.C. § 2254(b) and ©. The State contends, however, that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that the petitioner's claims must be rejected.

Turning to a substantive review of the petitioner's claims, the standard for review in this Court is that set forth in 28 U.S.C. § 2254. Specifically relevant is 28 U.S.C. § 2254(d)(1), which provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See also Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529

U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. See 28 U.S.C. § 2254(d)(1)-(2); Montoya v. Johnson, 226 F.3d 399 (5th Cir. 2000), cert. denied, 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. Montoya, supra, 226 F.3d at 404. See also Williams v. Taylor, supra, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief in the instant case.

Addressing first the petitioner's claim that the evidence was insufficient to support his conviction, the standard for testing the sufficiency of the evidence on federal habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Knox v. Butler, 884 F.2d 849, 851 (5th Cir. 1989), cert. denied, 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957 (1990). This standard of review applies in both direct and circumstantial evidence cases. Schrader v. Whitley, 904 F.2d 282 (5th Cir.), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution of conflicts in the evidence. Knox, supra; Valles v. Lynaugh, 835 F.2d 126 (5th Cir. 1988); Holloway v. McElroy, 632 F.2d 605 (5th Cir. 1980), cert. denied, 451 U.S. 1028, 101 S.Ct. 3019,

69 L.Ed.2d 398 (1981).  Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial. Knox, supra; Young v. Guste, 849 F.2d 970 (5th Cir. 1988).  State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the elements of the offense is entitled to great weight on federal habeas review. Hawkins v. Lynaugh, 844 F.2d 1132 (5th Cir.), cert. denied, 488 U.S. 900, 109 S.Ct. 247, 102 L.Ed.2d 236 (1988); Porretto v. Stalder, 834 F.2d 461 (5th Cir. 1987).

In the present case, the petitioner's sufficiency claim presents a mixed question of law and fact and, therefore, 28 U.S.C. § 2254(d)(1) governs the analysis.  In other words, this Court may not grant the petitioner's request for habeas relief unless it concludes that the trial court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States".  A decision is contrary to clearly established Federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "unreasonable application" standard, Williams instructs that a writ must issue "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In the present case, the governing state law is La. R.S. 14:30.1, Louisiana's statute relative to the offense of second degree murder, which defines the offense as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm or when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, including armed robbery.  In this regard, the evidence adduced at trial reflects that on the early morning of January 11, 1998, two persons, including the victim, Gavin James, and a companion, Brandon

Williams, were sitting in a vehicle in the parking lot of the Moonlight Inn, awaiting the arrival of a person from whom they wished to purchase drugs. Instead of the anticipated person, however, the defendant arrived with a sawed-off .22 caliber rifle and demanded money allegedly owed to him by Brandon Williams. According to eye-witness testimony, after Brandon Williams exited his vehicle, the defendant exited his vehicle, pointed his weapon at Brandon Williams and ordered the victim, Gavin James, to also exit the vehicle. When the victim and Brandon Williams were thereafter standing near the vehicle, with their hands raised, the defendant fired two shots, one of which killed Gavin James. The defendant then fled the scene on foot and later reportedly admitted to witnesses that he had fired the shots which killed Gavin James.

The petitioner, in contesting the sufficiency of the evidence, points primarily to purported inconsistencies in the testimony provided by eye-witnesses, and to unsupported speculation regarding possible alternative scenarios for the events established. He further suggests that the testimony of several witnesses was suspect because of admitted participation by these witnesses in illegal activity involving illicit drugs. These arguments are not persuasive.

The credibility of a witness is a factual determination. Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue shall be presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. In light of the above-related evidence, the Court finds no unreasonable application of Jackson v. Virginia and the Due Process Clause. Viewing the evidence in the light most favorable to the prosecution, the jury could easily have believed that the petitioner, armed with a weapon, went to the scene of the shooting with an intent to obtain money allegedly owed to him. Upon arrival, and after the two occupants of the second vehicle were outside of their vehicle, with their hands raised, and offering no provocation, the petitioner fired two shots in the direction of the occupants, striking the decedent in the head and killing him with one of the shots. There was no testimony from any person that the decedent was armed or that he was threatening the petitioner in any way at the time of the

shooting. These findings are sufficient to support a conviction of second degree murder under Louisiana law. It is not this Court's function to determine what the jury could have found if only it had viewed the evidence differently. Instead, the Court's role is to determine whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to prove every element of the crime beyond a reasonable doubt. Based upon the overwhelming evidence in favor of guilt, this Court finds no unreasonable application of Jackson. The alleged weaknesses in the testimony of the witnesses at best raised credibility issues which were within the exclusive province of the jury. Accordingly, this Court is unable to conclude that the state courts unreasonably applied the Due Process Clause and Jackson v. Virginia, supra, and the petitioner's application is without merit relative to this claim.

The petitioner next complains that the trial court erred in allowing testimony, over objection by defense counsel, from the wife of the decedent. The petitioner contends that this testimony was overly prejudicial and that it was introduced by the State solely to inflame the emotions of the jury. The State responds that the evidence was properly allowed to establish that the decedent neither owned nor possessed a weapon at the time of the incident.

A federal habeas court grants relief when the petitioner is held "in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal habeas court asks only whether a federal constitutional violation infected the trial. Pemberton v. Collins, 991 F.2d 1218 (5th Cir.), cert. denied, 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993). See also, Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). An error in the application of state law by the trial court does not provide grounds for habeas relief. Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Further, a federal court will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. Cook v. Morrill, 783 F.2d 593 (5th Cir. 1986).

Insofar as the instant claim relative to the victim's wife's testimony rests on the proper interpretation and application of state jurisprudence and state evidentiary rules, this is an issue not within the scope of federal habeas corpus review. Moreover, federal habeas review of the admission of evidence is limited to whether the state court's evidentiary ruling was sufficiently egregious to render the trial fundamentally unfair or to violate an explicit constitutional right. Peters v. Whitley, 942 F.2d 937 (5th Cir. 1991), cert. denied, 502 us 1113, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992); Edwards v. Butler, 882 F.2d 160 (5th Cir. 1989). The challenged evidence must be "a crucial, critical, or highly significant factor in the context of the entire trial." Thomas v. Lynaugh, 812 F.2d 225 (5th Cir.), cert. denied, 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987).

In the instant case, the evidence of guilt was overwhelming, and it is apparent that the victim's wife's testimony was not "a crucial, critical, or highly significant factor in the context of the entire trial." Rather, in the context of the entire trial, the admission of this evidence was harmless considering the substantial evidence of the petitioner's guilt. Any prejudicial effect resulting from the victim's wife's testimony, therefore, was not a substantial or critical factor in the determination of the petitioner's guilt, and further, such prejudicial effect was subject to offset by the trial court's admonition to the jury, in closing, that the jury was not to base its determination based upon emotion or sympathy. Accordingly, the petitioner has not carried his burden of rebutting the presumption of correctness of the trial court's findings by clear and convincing evidence as he was required to do pursuant to 28 U.S.C. § 2254(e)(1), and the petitioner's contention relative to this claim is without merit.

The petitioner next contends that the trial court erred in denying a motion for mistrial based upon the jury allegedly being subjected to a display of emotion from the victim's family's during a break in trial proceedings. In this regard, the record reflects that during a scheduled break, the jury was escorted outdoors by the bailiff to allow some of the jurors to smoke. During this break, counsel for the petitioner observed members of the victim's family, inside the courthouse, crying

near a window which was within view of the jurors located outside. In denying the petitioner's motion for mistrial, the trial court noted that the jurors, even if they had been aware of the crying, had no way of knowing that the persons crying were members of the victim's family and not members of the petitioner's family inasmuch as none had been identified and none were to testify at trial. Further, testimony was elicited from the bailiff, who remained with the jurors and was seated in a chair closer to the referenced window than were they, that he neither observed nor was aware of the conduct complained of by the petitioner's counsel inside the courthouse.

The petitioner's claim in this regard is not one of constitutional dimension. In Kinnamon v. Scott, 40 F.3d 731 (5th Cir.), cert. denied, 513 U.S. 1054, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994), the Fifth Circuit addressed a situation where one or more members of the jury allegedly observed the victim's daughter crying loudly. In a resulting challenge, the presiding state judge was unpersuaded that the outburst had even occurred. Notwithstanding, in thereafter reviewing the claim on habeas corpus, the Fifth Circuit concluded that even if the event in fact occurred, the court was "unpersuaded that there was any prejudicial error of constitutional magnitude" resulting from the jury's exposure to the outburst. Specifically, the Court found that the mere fact that the jury may have become aware that a family member was upset and angry at the person accused of murder failed to communicate anything new to the jury that would have impacted upon the trial. In the instant case, similarly, even if the jury was aware of or overheard a display of emotion occurring at some distance from them and inside the courthouse, and even if the jury was cognizant that the participants were members of the victim's family, both of which assumptions being questionable in light of the bailiff's testimony that he himself was unaware of same, this Court finds that such occurrence could have had no impact upon the jury's verdict. See also Coleman v. Giles, 140 Fed.Appx. 895 (11th Cir. 2005). Accordingly, the petitioner's claim in this regard is without merit and must be rejected.

Finally, Turning to the petitioner's claim that he was provided with ineffective assistance of counsel at trial and on appeal, he complains that his appointed trial counsel was deficient (1) in deciding to withdraw the original plea of "not guilty by reason of insanity", (2) in "opening the door" to evidence that the petitioner was a "drug dealer", (3) in failing to object to the introduction of "other crimes" evidence, and (4) in failing to litigate a pre-trial motion to quash the grand jury based upon alleged discriminatory practices in the grand jury foreman selection process.

A habeas petitioner who claims ineffective assistance of counsel must affirmatively demonstrate:

> (1) That his counsel's performance was "deficient", i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and
>
> (2) That the deficient performance prejudiced his defense, i.e., that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must make both showings in order to obtain habeas relief based upon an alleged ineffective assistance of counsel. Id. To satisfy the deficiency prong of the Strickland standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. Martin, supra, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the petitioner satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. Earvin v. Lynaugh, 860 F.2d 623 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989). To satisfy the prejudice prong of the Strickland test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Martin, supra, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case, he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." Id. at 816-17.

In this case, the petitioner first asserts that his counsel was deficient for not sufficiently investigating the petitioner's mental condition at the time of the offense and for deciding prior to trial to withdraw the petitioner's plea of "not guilty by reason of insanity" and to substitute a plea of "not guilty" with the hope of establishing a claim of justifiable homicide. In this regard, however, the record indicates that the petitioner's counsel did in fact conduct an investigation by seeking the appointment of a mental competency commission. Upon orders of the state court, the petitioner was thereafter examined by Drs. David B. Hale and F.A. Silva, both of whom concluded in their reports that the petitioner was mentally competent at the time of trial. In addition, and more importantly, Dr. Hale opined that the petitioner was, "to a reasonable scientific certainty ... sane at the time of the reported offense", and Dr. Silva opined, with little equivocation, that the petitioner was "probably" mentally competent at the time of the offense. Although both physicians acknowledged the petitioner's extensive history of drug abuse and the petitioner's admission to Meadow Wood Hospital for two weeks at age 15, and although Dr. Hale noted a prior diagnosis of attention deficit disorder, neither physician expressed any serious question regarding whether the petitioner was mentally incompetent at the time of the offense.

When a defendant asserts the affirmative defense of insanity, the ultimate issue is whether the defendant appreciated the nature and quality or the wrongfulness of his acts at the time the crime was committed. United States v. Levine, 80 F.3d 129 (5th Cir.), cert. denied, 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996). Nothing in the physicians' reports in the instant case or in the testimony of any witness indicates that, at the time of the shooting, the petitioner was unable to appreciate the nature or wrongfulness of his actions. His attorney, therefore, was under no obligation to pursue an insanity defense that had little chance of success. See Boston v. United States, 2008 WL 2704314 (W.D. Tex. July 8, 2008); Butler v. Cain, 2008 WL 687198 (E.D. La. March 10, 2008). See also Sloan v. Estelle, 710 F.2d 229 (5th Cir. 1983), cert. denied, 464 U.S. 1048, 104 S.Ct. 724, 79 L.Ed.2d 185 (1984). Accordingly, the petitioner has not demonstrated a "reasonable probability" that he was incompetent "sufficient to undermine confidence in the outcome." Strickland, supra. The petitioner, therefore, fails to establish that his attorney was deficient for making the strategic determination to forego the insanity defense and to present a defense of "not guilty" at trial.

The petitioner also complains of his attorney's questioning of a witness which, the petitioner contends, opened the door to evidence that the petitioner was engaged in selling drugs, thereby reflecting poorly on the petitioner's character. In this regard, the record shows that, during the petitioner's counsel's questioning of Samantha Abreo, the following exchange took place:

Q: Around the time that this occurred, did you smoke pot?

A: Around that time, yes, ma'am, I did.

Q: And do cocaine?

A: Yes, ma'am, I did at that time.

Q: And did you even get high with your son, Cody?

A: Yes, ma'am, I did.

> Q: Okay. And you got drugs for Cody and yourself from [rife with petitioner] Jeremy, didn't you?
>
> A: Purchased?
>
> Q: Or given to you? Either way.
>
> A: It may have been given.
>
> Q: May have been or was?
>
> A: Was given, yes, ma'am.

The petitioner contends that this questioning opened the door to testimony, on re-direct, that the petitioner was engaged "in the business of supplying drugs to people".

The Court concludes that the petitioner cannot show prejudice resulting from the above line of questioning. The evidence presented at trial revealed that all participants in the events leading up to the shooting had extensive histories of illegal drug use, and the fact that the petitioner was included in this activity cannot be seen to have influenced the jury in its determination. Further, the decision by counsel to pursue this line of questioning may be seen to be a strategic determination which is entitled to great deference from the Court. Yohey v. Collins, 985 F.2d 222 (5th Cir. 1993)("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices"). It is likely that petitioner's counsel wished to portray the events immediately preceding the shooting as being rife with danger, as presenting a potential for high emotion and even fear among the participants, and as presenting the possibility of gunplay, thereby supporting a defense of justification or supporting a verdict as to a lesser offense. In any event, the evidence of the petitioner's guilt was so overwhelming that this Court is unable to find, to a reasonable probability, that but for counsel's alleged error in this regard, the result of the proceeding would have been different or that the alleged error was "sufficient to undermine confidence in the outcome." Martin, supra, 796 F.2d at 816. Accordingly, this claim is without merit and must be denied.

The petitioner also complains of his attorney's failure to object to the introduction of other-crimes evidence at trial, specifically, evidence suggesting that the petitioner was engaged in armed robbery at the time of the offense. The petitioner, fails, however, to point out any legitimate basis for exclusion of the referenced evidence. In discovery prior to trial, the State signified its intent to introduce testimony at trial that, prior to the shooting, the petitioner pointed a gun at the victim and directed him to put up his hands, thereby giving notice to the defense that this evidence was sought to be admitted. There is no question, moreover, that this evidence was in fact an integral part of the transaction or occurrence which immediately preceded the offense charged and, as such, was part of the <u>res gestae</u> of the offense and was admissible. <u>See, e.g., Pratt v. Cain</u>, 142 F.3d 226 (5th Cir. 1998); La. C.Cr.P. Art. 404. Accordingly, there is no basis for concluding that the petitioner's attorney rendered ineffective assistance of counsel in failing to object to the referenced evidence and this claim, as well, must fail.

Finally, the petitioner complains of his counsel's failure, prior to trial and on appeal, to litigate a motion to quash which was filed relative to the alleged racially discriminatory grand jury selection process in Livingston Parish. In this regard, the petitioner argues that, although his counsel filed the motion to quash the indictment for this reason, she waived same by failing to pursue or litigate the motion by virtue of Louisiana Code of Criminal Procedure article 841.

Notwithstanding the petitioner's contention, it is clear from evidence presented by the petitioner to the state court on post-conviction attack that, had the motion to quash been litigated, it would have been unsuccessful. This evidence consisted of documentation reflecting the racial identities of grand jury foremen in Livingston Parish between 1977 and 1994. This evidence showed that of 36 grand jury foremen selected during that period, 28 were white, four were African-American, and the race of four was unknown. Assuming - for the petitioner's benefit - that the four unknown foremen were also white, then a total of four of the 36 grand jury foremen during this period were African-American. Thus, 11.1 percent of the grand jury foremen in Livingston Parish

between 1977 and 1994 were African-American. When this percentage is compared with other evidence presented by the petitioner, i.e., evidence showing that at no time during the referenced period did the percentage of African-American registered voters exceed eight percent, it is clear that the petitioner has not made even the slightest showing that African-Americans were excluded from the grand jury foreman position.[1]

Inasmuch as the petitioner has failed to show that litigation of the motion to quash would have been successful, he has failed to show any prejudice whatever resulting from such failure. Accordingly, there can be no finding by this Court that his trial or appellate counsel was ineffective for failing to pursue the referenced motion.

Based upon the foregoing, this Court concludes that the petitioner's application for habeas corpus relief in this Court is without merit and should be dismissed.

### RECOMMENDATION

It is the recommendation of the Magistrate Judge that the petitioner's application for habeas corpus relief be dismissed, with prejudice.

Baton Rouge, Louisiana, this 2nd day of October, 2008.

_____
DOCIA L. DALBY
MAGISTRATE JUDGE

---

[1] The Court further notes that this issue has been previously addressed by this Court, and the same conclusion reached, i.e., that there was insufficient proof of racial disparity in the grand jury selection process in Livingston Parish. See Danny Fabre v. Burl Cain, Warden, Civil Action No. 99-0668-C-M2.